**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARK CLARK,

            Plaintiff,

vs.                                                       Case No. 3:12-cv-146-J-JRK

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

            Defendant.
_____/

# OPINION AND ORDER[2]

## I. Status

Mark Clark ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff, who served in the military for about twenty four years before retiring in 2010, alleges disability based upon "Stroke, ptsd, degen disc,[ ]spine bone spur, htn,[ ]obst sleep apn[.]" Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed April 20, 2012, at 53-55, 199. On August 16, 2010, Plaintiff filed an application for DIB, alleging an onset date of April 10, 2009. Tr. at 160-61. Plaintiff later amended his alleged onset date to September 2, 2010. Tr. at 65. Plaintiff's application was denied initially, see Tr. at 100, 102-05, and was denied upon reconsideration, see Tr. at 101, 109-11.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed April 23, 2012; Reference Order (Doc. No. 12), entered April 24, 2012.

On May 23, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 44-99. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 52. The ALJ issued a Decision on June 22, 2011, finding Plaintiff not disabled through the date of the Decision. Tr. at 28-38. The appeals council then received additional evidence in the form of a representative brief, a decision letter from the Department of Veterans Affairs, and a letter from one of Plaintiff's treating physicians. Tr. at 5, 282-86, 1489-93. On December 9, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.[3] On February 10, 2012, Plaintiff commenced this action under 42 U.S.C.§ 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. See Plaintiff's Memorandum of Law in Support of His Position (Doc. No. 14; "Pl.'s Mem."), filed June 25, 2012. First, Plaintiff argues the ALJ erred at step two of the sequential evaluation process by finding Plaintiff does not suffer from a severe mental impairment. Pl.'s Mem. at 12-13. Second, Plaintiff contends the ALJ erred when he discounted the opinion of treating physician Arkam Rehman, M.D. Id. at 13-16. On August 3, 2012, Defendant filed a memorandum responding to Plaintiff's arguments. See Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective

---

[3] The Appeals Council originally had issued a notice on October 27, 2011 denying Plaintiff's request for review. Tr. at 8-11. Apparently because Plaintiff submitted additional medical evidence on that same date, see Tr. at 7, the Appeals Council set aside the initial October 27, 2011 denial, received the additional evidence, and again denied Plaintiff's request for review in a notice dated December 9, 2011, Tr. at 1-4.

-2-

memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 30-38.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since September 2, 2010, the amended alleged onset date."  Tr. at 30 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: degenerative disc disease and s/p cerebrovascular accident, dysphagia and gastroesophageal reflux disease (GERD)."  Tr. at 30 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted). The ALJ determined Plaintiff has the following RFC:

> [Plaintiff can] perform a restricted range of light work. He can lift/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours, and sit 6 hours in an 8-hour workday. He can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and frequently reach above shoulder with both arms. He can never climb ladders, ropes, or scaffolds. He must avoid hazards, moving mechanical parts, and high exposed places.

Tr. at 32. At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a personnel clerk." Tr. at 38 (emphasis and citation omitted). Because the ALJ found Plaintiff is capable of performing his past relevant work, the ALJ was not required to and did not proceed to step five. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 2, 2010, the amended alleged onset date, through the date of th[e D]ecision." Tr. at 38 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As stated above, Plaintiff raises two issues, each of which is addressed in turn.

### A.     Step Two Findings Regarding Plaintiff's Mental Impairment

Plaintiff first contends the ALJ erroneously found at step two of the sequential evaluation process that Plaintiff does not suffer from any severe impairments related to his "severe anxiety, post-traumatic stress disorder, or any other diagnosis referable to his mental condition[.]"  Pl.'s Mem. at 12.  Plaintiff recognizes that in making the nonsevere finding at step two, the ALJ relied upon findings of social security examining psychologist Diana M. Benton, Psy.D., and military examining psychiatrist William C. Keppler, III, M.D. Id.  Plaintiff argues, however, that the ALJ improperly deferred to Dr. Benton's conclusion that Plaintiff's "memory impairments alone would not 'prevent him from obtaining and maintaining some form of employment.'"  Id. (quoting Tr. at 1337).

Defendant, recognizing that "the record contains evidence of [P]laintiff's diagnoses of anxiety and P[ost] T[raumatic] S[tress] D[isorder] [("PTSD")]," argues, "[T]here is no evidence that either condition significantly limited Plaintiff's ability to perform any of the mental activities required by basic work." Def.'s Mem. at 5.  As such, according to Defendant, "the ALJ properly concluded that Plaintiff's anxiety and PTSD were not severe impairments." Id. at 10.

Step two of the sequential evaluation process requires the ALJ to determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that allegations of mental health issues constitute severe impairments. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"); see also Nigro v. Astrue, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (unpublished) (finding the plaintiff "failed to meet her burden of showing that depression or anxiety were severe impairments"). Further, "[t]he severe impairment either must have lasted or must be

expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

With regard to mental limitations, an ALJ is required to rate degrees of limitation in four broad functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The Regulations provide, "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1); see also 20 C.F.R. § 404.1521.

Here, at step two, the ALJ found Plaintiff has severe physical impairments, but the ALJ declined to find that the PTSD and anxiety are severe. Tr. at 30-32. The ALJ explained in detail why Plaintiff's "[PTSD] and anxiety disorder do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities[.]" Tr. at 30. The ALJ

provided a comprehensive summary of the relevant evidence, including the findings of Dr. Keppler and Dr. Benton. Tr. at 31-32. Addressing Dr. Keppler's findings and opinion, the ALJ correctly stated, "Dr. Keppler noted that a mental condition had been formally diagnosed, but symptoms were not severe enough to interfere with occupational and social functioning or to require continuous medication." Tr. at 31 (citing Tr. at 287-536[5]). The ALJ also correctly stated, "[A]lthough [Plaintiff] reported short term memory difficulties, based on his presentation and performance on MSE tasks, it was not believed [by Dr. Benton] that memory functioning alon[e] would prevent [Plaintiff] from obtaining and maintaining some form of employment." Tr. at 32 (citing Tr. at 1334-39).

As far as the four broad functional areas for evaluating mental disorders, the ALJ found as follows. Plaintiff has no limitation in activities of daily living; Plaintiff has mild limitation in social functioning; Plaintiff has mild limitation in maintaining concentration, persistence, or pace; and Plaintiff has experienced no episodes of decompensation of extended duration. Tr. at 32. The ALJ, therefore, found Plaintiff's mental impairments "not severe." Tr. at 32, 30; see also 20 C.F.R. § 404.1520a(d)(1); 20 C.F.R. § 404.1521. These findings are supported by substantial evidence.[6]

---

[5] The ALJ actually cited "Exhibit 1F," which is found in the administrative transcript at pages 287 through 536. Exhibit 1F is quite voluminous because it contains most or all of Plaintiff's medical records from the Army Medical Center. The actual psychiatric evaluation to which the ALJ was referring can be located in the administrative transcript at pages 379 through 389 (with a duplicate copy located at pages 1204 through 1214).

[6] The undersigned notes that one nonexamining psychologist, Michelle Butler, Psy.D., assigned moderate limitations in some of the broad functional areas, see Tr. at 1340-57, but the ALJ assigned the opinion only "some weight[.]" Tr. at 37 (referring to Dr. Butler and others generally as "physicians employed by the State Disability Determination Services") (citing, e.g., Tr. at 1340-57). Plaintiff does not quarrel with the weight assigned to Dr. Butler's opinion.

Assuming merely for purposes of argument that the ALJ erred by finding Plaintiff's mental health impairments are not severe, any error would be harmless. "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two). Even if an ALJ's finding that an impairment is not severe at step two is considered error, such error is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) (unpublished); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

Here, after making the step two findings, the ALJ proceeded to the next steps of the sequential evaluation process by finding that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted). Then, the ALJ noted that he carefully considered the "entire record" in determining Plaintiff's RFC at a later step in the sequential evaluation process. Tr. at 32 (emphasis omitted); see Burgin v. Comm'r of Soc. Sec., 420 F. App'x at 903; Heatly, 382 F. App'x at 825; see also

Jones v. Dept. of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (recognizing that a simple expression that the ALJ considered a claimant's impairments in combination constitutes a sufficient statement of such findings). Consequently, even if an error could be identified at step two, the error would be harmless.

Plaintiff further contends the ALJ erred in determining Plaintiff's RFC because the RFC did not include any limitations from his mental conditions such as "impaired memory and concentration[.]" Pl.'s Mem. at 13. As previously stated, however, Dr. Benton– whose evaluation findings Plaintiff relies upon in contending he has an impaired memory– noted that Plaintiff's memory functioning should not preclude Plaintiff from working. Tr. at 1337. Further, in light of the ALJ's correct determination that the mental conditions do not affect Plaintiff's ability to perform work activities, the ALJ was not required to include any limitations resulting from the mental conditions in the RFC.

### B. Opinion of Treating Physician Dr. Rehman

Plaintiff next contends the ALJ erred in assigning little weight to the opinion of treating physician Dr. Rehman regarding the effects of Plaintiff's spine impairment. Pl.'s Mem. at 13-16. According to Plaintiff, the reasons set forth for discounting the opinion are insufficient. Id. Defendant, on the other hand, contends the ALJ's reasons are sufficient and supported by substantial evidence. Def.'s Mem. at 11-16.

Dr. Rehman is one of several medical professionals at Sunshine Spine & Pain, P.A. who treated Plaintiff for his spine impairment. See Tr. at 1279-1304, 1406-49. On January 4, 2011, Dr. Rehman completed a "Cervical Spine Impairment Questionnaire[.]" Tr. at 1428-

34 (capitalization and emphasis omitted).[7] In the questionnaire, Dr. Rehman stated that he treated Plaintiff from September 21, 2010 through January 4, 2011, and the treatment occurred once or twice per month. Tr. at 1428. According to Dr. Rehman, Plaintiff's symptoms and limitations had been occurring since 2009. Tr. at 1434.

Dr. Rehman wrote that Plaintiff has limited range of motion and mildly decreased flexion. Tr. at 1428. Also, Dr. Rehman indicated Plaintiff has mild crepitus in the cervical spine. Tr. at 1429. Dr. Rehman stated Plaintiff has "sharp/aching" pain that cannot be treated without unacceptable side effects. Tr. at 1429-30. Dr. Rehman opined that Plaintiff's condition precludes him from keeping his neck in a constant position. Tr. at 1430. Dr. Rehman further opined that Plaintiff is not capable of performing a full time job that requires activity on a sustained basis. Tr. at 1431.

Dr. Rehman stated Plaintiff can sit zero to one hours per day; Plaintiff can stand or walk zero to one hours per day; Plaintiff must not sit continuously; Plaintiff must get up and move around every hour; and Plaintiff needs "1 hour at the most" before he can sit again. Tr. at 1431. Dr. Rehman opined Plaintiff can lift zero to ten pounds occasionally, but never any more than that. Tr. at 1431. Dr. Rehman noted Plaintiff can carry zero to ten pounds occasionally, but never any more than that. Tr. at 1431.

According to Dr. Rehman, Plaintiff has significant limitations in repetitive reaching, handling, fingering, or lifting, and marked limitations in grasping, using fingers for fine

---

[7] The questionnaire is actually dated "1/4/10," Tr. at 1434, but the undersigned surmises it was completed on January 4, 2011 because Dr. Rehman indicated on the form that he had last examined Plaintiff on January 4, 2011, Tr. at 1428.

-11-

manipulations, and using arms for reaching. Tr. at 1433. Dr. Rehman opined Plaintiff can never push, pull, kneel, bend, or stoop. Tr. at 1434.

Dr. Rehman also noted Plaintiff would need unscheduled breaks from work every hour, Tr. at 1433, and Plaintiff would likely be absent from work more than three times per month, Tr. at 1434. As far as medications and other treatment, Dr. Rehman stated that Plaintiff is prescribed "Norco" and "Ativan," and he has had "facet blocks (lumbar)" which provided about fifty percent temporary relief. Tr. at 1432 (capitalization omitted).

The Regulations instruct ALJs how to properly weigh the medical opinions[8] of treating physicians.[9] See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment

---

[8] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[9] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, after summarizing the medical evidence and Dr. Rehman's opinion on the questionnaire, the ALJ assigned "little weight" to the opinion of Dr. Rehman.  Tr. at 34-35. The ALJ provided the following reasons for assigning the opinion little weight:

> . . . [Plaintiff] has a treatment history through Sunshine Spine & Pain beginning in September 2010; however, Dr. Rehman only examined [Plaintiff] on two occasions; other exams were performed by ARNPs. Furthermore, Dr. Rehman opined that [Plaintiff]'s limitations had been present since 2009, but he fails to explain how he arrived at this conclusion because [Plaintiff] did not begin care there until September of 2010. Furthermore, Dr. Rehman's opinion is not supported by treatment notes from Sunshine Spine & Pain and it is inconsistent with the evidence of record when considered in its entirety, including statements/testimony from [Plaintiff] regarding activities of daily living. Indeed, . . . [Plaintiff] sat through a 70-minute hearing without any problems, which is

> not consistent with Dr. Rehman's opinion that [Plaintiff] could sit for just 60 minutes in an entire 8-hour workday.

Tr. at 35.

The ALJ's reasons for discounting Dr. Rehman's opinion amount to the requisite "good cause" and are supported by substantial evidence in the record. The ALJ correctly noted records from Sunshine Spine and Pain indicate that Dr. Rehman rarely examined Plaintiff himself; instead, Plaintiff was often examined by nurse practitioners. See Tr. at 1279-1304, 1406-49; see also 20 C.F.R. § 404.1527(c) (stating that nature and extent of treatment relationship are relevant factors to consider). The ALJ also correctly observed that it is difficult to determine how Dr. Rehman arrived at his conclusion that Plaintiff's symptoms have been present since 2009, given that Plaintiff began treatment at Sunshine Spine and Pain in September 2010. See Tr. at 1281 (intake questionnaire dated September 20, 2010). The ALJ's finding that Dr. Rehman's opinions are not supported by the treatment notes is also supported by substantial evidence, given that the treatment was generally conservative in nature. See Tr. at 1279-1304, 1406-49. Finally, the ALJ correctly observed that Plaintiff's statements and testimony about his activities and his ability to sit through a sixty minute hearing erode the reliability of Dr. Rehman's opinion. See, e.g., Tr. at 209-16 (Plaintiff indicating on a questionnaire dated September 2010 that he watches television, gardens, helps clean the house, "tr[ies] to prepare supper," mows the lawn with a riding mower, drives, shops for food, goes to church, can lift twenty pounds, and can walk one half mile of a mile), 257 (Plaintiff indicating on a questionnaire dated January 2011 that he watches television, helps care for his disabled wife, helps prepare meals, cleans sometimes, drives, shops for food, and can walk 100 feet without resting), 87-88 (Plaintiff testifying on

May 23, 2011 that he can sit fifteen minutes at a time comfortably, stand thirty minutes at a time comfortably, and walk to the parking lot). Accordingly, the undersigned finds no error in the ALJ's election to assign Dr. Rehman's opinion little weight.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 4, 2013.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw

Copies to:

Counsel of Record